UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CONRAD R. HUDSON,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>VVV CORPORATION,  )<br>)<br>Defendant.  )<br>)<br>) | Case No. 09-cv-1184 |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 14) and Plaintiff's Response (Doc. 15). Also before the Court are Defendant's Motion for Leave to File a Reply (Doc. 16), Plaintiff's Motion to Strike Defendant's Motion for Leave to File a Reply (Doc. 17), Defendant's Response to Plaintiff's Motion to Strike (Doc. 18) and Defendant's Amended Motion for Leave to File a Reply *Instanter* (Doc. 19). For the following reasons, Defendant's Motion for Summary Judgment is GRANTED. In addition, Defendant's First Motion for Leave to File a Reply (Doc. 16) is WITHDRAWN, Plaintiff's Motion to Strike Defendant's First Motion for Leave to File a Reply (Doc. 17) is MOOTED and Defendant's Amended Motion for Leave to File a Reply (Doc. 19) is DENIED.

### PROCEDURAL HISTORY

Plaintiff filed his Complaint on May 22, 2009. (Doc. 1). On August 18, 2009, Magistrate Judge Gorman approved a Discovery Plan which called for all dispositive motions to be filed by July 1, 2010. (Minute Entry of 8/18/2009). On

July 1, 2010, after discovery had been completed, Defendant filed its Motion for Summary Judgment. (Doc. 14). Although Local Rule 7.1(D)(2) provided Plaintiff with 21 days to respond, he did so only 15 days later, on July 16, 2010. (Doc. 15). Defendant then had 14 days, or until July 31, 2010 to Reply. (Local Rule 7.1(D)(3)). Defendant did not timely reply. Instead, on August 5, 2010, Defendant sought Leave to File an untimely Reply. (Doc. 16).

In its original Motion for Leave to File, Defendant alleged that it had consulted with Plaintiff's attorney, and that Plaintiff's attorney had no objection to Defendant filing a Reply after the original deadline. (Doc. 16 at 1). However, on August 6, 2010, Plaintiff moved to strike Defendant's Motion for Leave to File a Reply, alleging that Plaintiff's attorney had made no representation as to whether or not it had an objection to a late filing. (Doc. 17 at 1). It appears that Defendant's counsel had spoken with the assistant to Plaintiff's attorney, who said only that Plaintiff's attorney did not ordinarily object to such filings, not that there would be no objection in this case. (Doc. 18 at 1-2). On August 9, 2010, Defendant filed a Response to Plaintiff's Motion to Strike apologizing to the Court and Plaintiff's counsel for the misunderstanding and seeking to withdraw its original motion. (Doc. 18). Accordingly, Defendant's First Motion for Leave to File (Doc. 16) is WITHDRAWN, thereby rendering Plaintiff's Motion to Strike (Doc. 17) MOOT.

The same day it filed its Response to Plaintiff's Motion to Strike withdrawing its original Motion for Leave to File, Defendant submitted an Amended Motion for Leave to File a Reply Brief *Instanter*. (Doc. 19). Defendant argued that under Local Rule 6.1, it would suffer a substantial injustice if it were not allowed such leave and

that doing so would cause no prejudice to Plaintiff because the Reply was filed within the original timeframe contemplated by the Discovery Plan. (Doc. 19 at 1-3). Local Rule 6.1 provides that a Motion for Extension of Time that is "filed out of time will be denied, unless the presiding judge determines that such denial would create a substantial injustice." Further, Local Rule 7.1(D) dictates that for motions regarding summary judgment, motions for extension of time "will not be looked upon with favor" and "may be summarily denied unless they are filed within the original time as allowed by this rule or by the scheduling order." Because Defendant's Amended Motion for Leave was not timely filed, nor does the Court find that without leave Defendant will suffer substantial injustice, such Motion is DENIED. The Court will proceed with only Defendant's Motion for Summary Judgment (Doc. 14) and Plaintiff's Response (Doc. 15) before it.

## FACTUAL BACKGROUND[1]

Plaintiff Conrad Hudson is a 75-year old resident of Princeton, Illinois. (Doc. 15 ¶ 1). In 1968, Plaintiff formed Hudson Carpet Cleaning, a company that he ran until 2001 when he sold it to his son Mark Hudson. (Doc. 15 ¶¶4-5). Between February 2001 and August 2005, Plaintiff continued to work for his son Mark at what was now named Hudson Cleaning and Restoration. (Doc. 15 ¶ 5). In August 2005, Mark sold the company to VVV Corporation, and the name was again changed to ServiceMaster by Hudson. (Doc. 15 ¶ 6).

---

[1] These background facts reflect the Court's determination of the undisputed facts, unless otherwise noted. Facts that are omitted are immaterial; if an included fact is immaterial to the Court's determination, this will be noted.

When it purchased the company, Defendant VVV Corporation ("VVV") wanted Plaintiff to continue to work there as he was the "face of the cleaning business." (Doc. 15 ¶ 7). Plaintiff did, in fact, continue to work for ServiceMaster by Hudson doing largely marketing work. (Doc. 15 ¶¶ 8, 10). Plaintiff was paid $15.00 an hour, had a good relationship with VVV, and intended to keep working there. (Doc. 15 ¶ 10). On October 24, 2006, Plaintiff was hit by a truck while riding his scooter to work. (Doc. 15 ¶ 9). Plaintiff needed surgery to repair injuries to his left arm, had four broken ribs, and had bad bruises on his knee and ankle. (Doc. 15 ¶ 9).

On November 17, 2006, Plaintiff had not yet returned to work. (Doc. 15 ¶¶ 12, 17). Mr. Meckerman, VVV's regional manager overseeing the Rockford and Princeton areas, emailed Mr. VanDenBerg, the president and CEO of VVV, Mr. Merth, the Princeton branch manager, and Mr. Veldman, a corporate shareholder, regarding Plaintiff's situation. (Doc. 15 ¶ 13). The relevant portion of the e-mail is as follows: "We are looking at reducing Bob Hudson's [Plaintiff's] hours of employment due to age and the recent accident. Stephanie will start to take on Rescom estimating and direct marketing duties. Looking into the future she may take over the marketing duties when Bob retires. This will leave a type of void in the HR department. Your input would be appreciated." (Doc. 15-1). Mr. Meckerman sent this e-mail to address what steps should be taken to fill the marketing void that was left in Plaintiff's absence after his accident. (Doc. 15 ¶ 14).

As of January 2007, Plaintiff was still unable to return to work. (Doc. 15 ¶ 19). At this time, Mr. VanDenBerg contacted him to see how he was recovering and

determine when he could come back to work for ServiceMaster by Hudson. (Doc. 15 ¶ 20). On January 24, 2007, the two men met for lunch in Princeton, Illinois. (Doc. 15 ¶ 21). During their lunch meeting, Plaintiff and Mr. VanDenBerg discussed Plaintiff's return to work. (Doc. 15 ¶¶ 22-27). Mr. VanDenBerg believed that Plaintiff would still need to undergo physical therapy after he returned to work, and offered Plaintiff a flexible work schedule so that he could have time to both work and attend therapy.[2] (Doc. 15 ¶ 25). In conjunction with this offer, Mr. VanDenBerg proposed that Plaintiff receive a base salary of $6,000 a year, $10.00 an hour on top of his salary, a bonus of up to $1,200 a year on top of his salary and hourly wages, a company car, and fuel for the company car. (Doc. 15 ¶ 26). Plaintiff did not give Mr. VanDenBerg an answer at lunch, but asked that the proposal be put in writing. (Doc. 15 ¶ 27).[3]

On January 29, 2007, Mr. VanDenBerg sent Plaintiff a letter outlining the options that they had discussed at lunch ("Offer Letter"). (Doc. 15 ¶ 28). In this Offer Letter, Mr. VanDenBerg told Plaintiff that he wanted to retain his services "into the foreseeable future." (Doc. 14-9 at 1). He also said that "we would like to find a way to keep you engaged with the business . . . at least three years and hopefully longer, if you are willing and able to do so." (Doc. 14-9 at 1). Mr.

---

[2] Plaintiff admits that although he knew that he would not be in therapy when he returned to work, he did not inform Mr. VanDenBerg of this fact. (Doc. 14-1 at 172).
[3] There is some dispute between the parties regarding Plaintiff's reaction to Mr. VanDenBerg's offer during the lunch meeting. Plaintiff contends that he told Mr. VanDenBerg that he was not satisfied with the offer at that time, while Defendant is not clear as to what was actually said. Because Defendant has moved for summary judgment, the Court will view all facts in a light most favorable to Plaintiff, and therefore assume that Plaintiff did inform Mr. VanDenBerg that he was not satisfied with the offer at this time.

5

VanDenBerg then discussed the terms of Plaintiff's employment. With regards to hours, Mr. VanDenBerg stated that "on a week in/week out basis you will be able to set your own schedule, adjusting your start and end times around your rehabilitation therapy schedule." (Doc. 14-9 at 1). Further, he noted that "generally we believe you can accomplish the Duties and Responsibilities by working about 20 hours per week and 1,000 per year, but we'll be flexible within what we deem a reasonable range around that number." (Doc. 14-9 at 2). Finally, Mr. VanDenBerg laid down the compensation terms as discussed at lunch and concluded by requesting that Plaintiff let him know if the options were acceptable. (Doc. 14-9 at 2).

On February 16, 2007, Mr. Hudson was still unable to return to work due to his physical condition, however he continued to plan on returning as soon as he was cleared by his doctor. (Doc. 15 ¶¶ 30, 31, 49). Sometime after this date, Plaintiff contacted Mr. Merth and told him that he would not accept the terms of Mr. VanDenBerg's letter. (Doc. 15 ¶ 47).[4] On March 19, 2007 Plaintiff sent Mr. VanDenBerg an official letter of resignation ("Resignation Letter"). (Doc. 14-4). In this letter, Plaintiff stated that "After reading your letter of January 29, 2007 and giving it a considerable amount of thought, I feel I have no alternative but to resign my position with your business due to loss of income." (Doc. 14-4). Plaintiff went on to note that under the terms of Mr. VanDenBerg's offer, his hours and earning

---

[4] It is not clear on what date Plaintiff spoke to Mr. Merth, however based upon Plaintiff's statement that he planned on returning to work for VVV on February 16 and the fact that Mr. VanDenBerg responded to Plaintiff's rejection on March 22, 2007, the Court finds that the conversation must have occurred at some point between these two dates.

would be halved. (Doc. 14-4). On March 22, 2007, Mr. VanDenBerg responded to Plaintiff's Resignation Letter. (Doc. 14-12). He told Plaintiff that in his Offer Letter he had "tried to incorporate the things you told me about your capabilities, your available time to work, and the needs of business." (Doc. 14-4). Mr. VanDenBerg asked Plaintiff to reconsider his decision to quit and requested that Plaintiff "go through the [Offer L]etter and tell me exactly what you would like amended." (Doc. 14-4). He concluded by stating that "I have faith that if your goal is to rejoin your team you can review my letter and your personal situation and provide constructive alternatives." (Doc. 14-4). Mr. VanDenBerg wanted Plaintiff to return to work and would have negotiated any of the terms of his Offer Letter in order to accomplish that goal. (Doc. 15 ¶ 36).

## **LEGAL STANDARD**

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. In ruling on a motion for summary judgment, the court must view the evidence on record in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant; however, the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). The court draws only reasonable inferences. *Id.*

7

It is not the court's function to scour the record in search of evidence to defeat a motion for summary judgment. Instead, the court relies on the non-moving party to identify the evidence which creates an issue of triable fact. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (*quoting Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, however, the "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts," such matters must be left for the jury. *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007). Accordingly, the summary judgment standard is applied "with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491 (7th Cir. 2000).

## DISCUSSION

Plaintiff contends that Defendant discriminated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq. by offering him the conditions of employment set forth in Mr. VanDenBerg's Offer Letter. (Doc. 1 at 2-3). According to Plaintiff, he was forced to retire as a result of the Offer Letter, which constituted an "adverse job action" based upon Plaintiff's age. (Doc. 1 at 3). Defendant counters, in its Motion for Summary Judgment, that Plaintiff could not have been forced to retire, or constructively discharged, because

he never attempted to inform Defendant about what the problem was with the Offer Letter, or to work out an acceptable alternative.[5]

Under the ADEA it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Such discrimination is often referred to as a "materially adverse employment action," or a "tangible employment action." *Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 744 (7th Cir. 2002). Accordingly, there are two questions which the Court must consider. First, did Plaintiff suffer a materially adverse employment action, and second, if Plaintiff did suffer such a materially adverse employment action, was it based upon Plaintiff's age. *See Haugerd v. Amery Sch. Dist.*, 259 F.3d 678, 691 (7th Cir. 2001).[6] Plaintiff may establish a violation of the ADEA with either evidence of discriminatory intent, whether direct or circumstantial, or via the indirect burden-shifting method.[7] *Id.* However, regardless of the method used, if Plaintiff did not suffer a discriminatory act, then it is not necessary for the Court to consider what motivated Defendant's actions. *Id.*

---

[5] In their filings, the parties appear to the Court to be arguing two different legal theories. While Defendant focuses on whether or not there was a constructive discharge, Plaintiff appears to argue that Mr. VanDenBerg's Offer Letter, in and of itself, constituted an adverse employment action. The Court cannot determine which theory Plaintiff is advancing, however, as will be discussed, they both fail as a matter of law.

[6] Although in *Haugerd* the Seventh Circuit was discussing discrimination under Title VII, because the operative language of the ADEA was modeled after Title VII, the two statutes are given a parallel construction. *See Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 413 (1985).

[7] Plaintiff here has chosen to only argue a case of discrimination based upon the direct method. (Doc. 15 at 17).

9

In considering whether there has been an act of discrimination, the Seventh Circuit has classified three types of cases: 1) "cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished," 2) cases in which the employee is transferred to another position which significantly reduced his career prospects, and 3) cases in which the employee's working conditions create an objective hardship, including those cases in which such conditions lead the employee to resign. *Id*. Here, based upon the undisputed facts, Plaintiff does not fall under any of these categories.

While Plaintiff is correct that adverse employment actions are defined broadly, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1993). Mr. VanDenBerg's Offer Letter does not constitute discrimination. Although this potentially may have been a case in which Plaintiff's "compensation, fringe benefits, or other financial terms of employment [were] diminished" had Mr. VanDenBerg, or someone else at VVV Corporation, imposed the new terms and conditions of employment upon Plaintiff without his input or consent, merely offering them in an effort to determine the scope Plaintiff's future employment is not enough.[8] It is undisputed, and Mr. VanDenBerg's two letters demonstrate, that these were simply options for Plaintiff to consider and to which he was asked to respond. (Doc. 14-4;

---

[8] The Court further notes that under the facts as Mr. VanDenBerg believed them, and Plaintiff does not dispute that Mr. VanDenBerg believed this, Plaintiff would have to be in physical therapy and thus only able to work part time. If that was the case, Mr. VanDenBerg's offer would have provided Plaintiff with greater compensation than his previous salary. A base salary of $6,000 plus $10.00 an hour for 20 hours a week would result in Plaintiff taking home around $16,000 a year, whereas $15.00 an hour for 20 hours a week would result in yearly earnings of only $15,000. (*See* Doc. 14 at 11).

14-9). The fact that Plaintiff decided to quit rather than constructively respond to the letters does not transform Mr. VanDenBerg's offer into an actual change in the terms of Plaintiff's employment.

Further, the Offer Letter is not enough to constitute working conditions which were so objectively unreasonable as to constitute a constructive discharge. "Constructive discharge does constitute an adverse employment action and is deemed to have occurred when the plaintiff shows that [he] was forced to resign because [his] working conditions, from the standpoint of the reasonable employee, had become unbearable." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 408-09 (7th Cir. 2008). There are two methods under which Plaintiff can prove constructive discharge. First, he can show that unlawful discrimination made his working environment so intolerable that a reasonable person would be forced to resign. *Bannon v. Univ. of Chicago*, 503 F.3d 623, 629-30 (7th Cir. 2007). This requires Plaintiff to show a discriminatory work environment that was "even more egregious" than what a plaintiff would have to prove for a "hostile work environment" claim. *Fisher*, 519 F.3d at 409. In the alternative, Plaintiff can show that Defendant acted in such a way as to communicate to him, as a reasonable employee, that he would be terminated unless he resigned. *Id.*

While it does not appear from the undisputed facts that Plaintiff's work environment was in any way egregious or hostile or that Mr. VanDenBerg communicated to him that he was about to be terminated,[9] what is absolutely fatal

---

[9] In fact, Mr. VanDenBerg's letters make clear that VVV wanted Plaintiff to continue working for as long as he desired. Plaintiff does not dispute this, but

11

to Plaintiff's constructive discharge claim is the Seventh Circuit requirement that "absent extraordinary conditions, a complaining employee is expected to remain on the job while seeking redress." *Grube v. Lau Indus.*, 257 F.3d 723, 728 (7th Cir. 2001). In other words, "an employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *Id.* Here, the undisputed facts indicate that Plaintiff not only failed to give Defendant a chance to work out the perceived problem with the Offer Letter, he also ignored Mr. VanDenBerg's entreaties to speak with him about the perceived problems so that they could reach an agreeable solution. It is undisputed that Mr. VanDenBerg wanted Plaintiff to continue to work for ServiceMaster by Hudson, and that he was open to negotiating any terms of the Offer Letter in order to accomplish that goal. (Doc. 15 ¶ 36). Because Plaintiff quit without giving Defendant any opportunity to remedy potential problems, his constructive discharge claim must fail as a matter of law.

Accordingly, Plaintiff has failed to show any facts which indicate that there was a materially adverse employment action. As there was no adverse action, that is Plaintiff was not discriminated against, it is unnecessary for the Court to consider whether Plaintiff was discriminated against on account of his age. Still, even if the Court had found that Mr. VanDenBerg's Offer Letter constituted discrimination, the Court notes that Plaintiff has also failed to show that his age was the "but-for" cause of the offer. In *Gross v. FBL Financial Services*, 129 S.Ct. 2343, 2350 (2009), the Supreme Court held that "the ADEA's requirement that an

---

instead argues that "VVV wanted to purchase a Rolex employee like Hudson for the price of a Timex." (Doc. 15 at 16).

employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." (citations omitted).

Here, the undisputed facts indicate that it was not age, but Plaintiff's accident and recovery that prompted Defendant to offer Plaintiff a reduction in hours. While the Meckerman e-mail does refer to Plaintiff's age, it states that Plaintiff's hours may be reduced "due to age *and the recent accident.*" (Doc. 15-1 (emphasis added)). Further, the e-mail was not sent until nearly a month after Plaintiff had been injured and when he had shown no signs of returning to work. (Doc. 15 ¶¶ 9, 12, 13). Finally, it is undisputed that Mr. VanDenBerg thought that Plaintiff would still need to go to physical therapy (to recover from the accident) after returning to work, and offered Plaintiff a flexible, part-time, work schedule so that he could do both. (Doc. 15 ¶ 25). Because there are no facts which demonstrate that there was any concern about Plaintiff's age prior to the accident (in fact Plaintiff's employment with Defendant began when he was approximately 70 years old),[10] and it is undisputed that Mr. VanDenBerg offered Plaintiff the return package he did so that Plaintiff could continue to recover from his accident, it appears that it was the scooter accident, and not Plaintiff's age, which was the reason for the diminished hours in Mr. VanDenBerg's Offer Letter.

---

[10] The Seventh Circuit has previously held that when a plaintiff is already in the protected class at the time he is hired, the Court can infer that his employer did not later discriminate against him on account of his age. *Ritter v. Hill-N-Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000) (plaintiff 63 when hired); *Rand v. CF Indus.*, 42 F.3d 1139, 1147 (7th Cir. 1994) (plaintiff 47 when hired).

Because, based upon the undisputed facts, Mr. VanDenBerg's Offer Letter does not constitute an adverse employment action, nor was Plaintiff's age the "but-for" cause for the Offer being given, Plaintiff's ADEA claim fails as a matter of law.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 14) is GRANTED. In addition, Defendant's First Motion for Leave to File a Reply (Doc. 16) is WITHDRAWN, Plaintiff's Motion to Strike Defendant's First Motion for Leave to File a Reply (Doc. 17) is MOOTED and Defendant's Amended Motion for Leave to File (Doc. 19) is DENIED. IT IS SO ORDERED.

CASE TERMINATED.

Entered this <u>20th</u> day of October, 2010.

                                                       s/ Joe B. McDade
                                              JOE BILLY McDADE
                                        United States Senior District Judge